UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

ANDREA MICHELLE JONES aka ANDREA
MICHELLE SCHMELING, aka ANDREA
JONES, dba OAKWOLD FARMS, and
SHANE DANIEL JONES,

          Debtors.

_____/

Case No. 24-00842-swd
Hon. Scott W. Dales
Chapter 12

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                    Chief United States Bankruptcy Judge

*Pro se* chapter 12 debtors Andrea Michelle Jones and Shane Daniel Jones (the "Debtors")

seek an order disqualifying Robert J. Pleznac, Esq., as counsel for creditor Peggy Weeks in their

bankruptcy proceeding. *See* Debtors' Motion to Disqualify Counsel for Professional Misconduct

and Ethics Violation (ECF No. 24, the "Motion"). In their Motion, they allege that Mr. Pleznac

conducted himself unprofessionally in violation of M.R.P.C. 4.4 and 8.4, largely related to two

events in January 2022, and Mr. Pleznac's conduct in connection with the § 341 meeting of

creditors in the Debtors' current case.

The court conducted an evidentiary hearing to consider the Motion on July 10, 2024, in

Grand Rapids, at which Ms. Jones and Ms. Weeks testified. No one offered any exhibits into

evidence. This opinion sets forth the court's findings of fact and conclusions of law in accordance

with Rule 7052.

The context preceding the Debtors' filing of this Motion is a years' long dispute about the affirmative easement that Ms. Weeks (as the holder of a dominant estate) evidently uses over the Debtors' servient estate -- agricultural real estate in Calhoun County.[1]  Although the parties differ in their description of the encounter between the Debtors and Mr. Pleznac's wife, Susan, at the Calhoun County property in January 2022,[2] suffice it to say that tempers flared and law enforcement authorities responded to diffuse the situation.  During that encounter, Ms. Jones testified that Susan Pleznac identified herself as Ms. Weeks's legal representative and behaved in a threatening manner.  Both Mr. Jones and Ms. Weeks agreed during cross-examination that Ms. Pleznac is "spunky," and that spunk was evidently on display during the first encounter.

Ms. Weeks testified that Ms. Pleznac was on site during the first encounter as a friend, not as a legal representative.  Even assuming, however, that Ms. Pleznac represented herself as Ms. Weeks's legal representative, there is no suggestion that *Mr. Pleznac* ever did.  In short, Ms. Jones's testimony offered no basis, other than a matrimonial bond, for attributing Ms. Pleznac's conduct that day to Mr. Pleznac.  In his closing argument, Mr. Jones himself stated that Ms. Pleznac was "the only one involved" on Ms. Weeks's behalf in the "hostile interaction."  Certainly, at this stage in the life of our nation no one would suggest that a husband has authority to control his wife simply by virtue of their marriage. Indeed, spouses may express themselves freely, as Justice Alito recently observed in response to calls for his own disqualification based on his wife's expressive

---

[1] As the court made clear during the hearing, nothing in today's order should be read to affect the parties' property rights at issue in the civil action now pending in the Calhoun County Circuit Court, which the court recently determined could resume notwithstanding the automatic stay. *See* Order dated July 12, 2024 (ECF No. 71) (granting relief from the automatic stay).

[2] Recognizing that witness perceptions of the same events may vary depending on points of view, bias, emotion, and other factors, the court generally regards the testimony of Ms. Jones and Ms. Weeks as sincere and truthful.

conduct.[3]  To summarize, the testimony on the record includes no evidence of any employment or contractual relationship between Mr. and Ms. Pleznac that would warrant holding him vicariously liable for her misbehavior, if in fact she misbehaved.

Similarly, the testimony from both witnesses did not suggest that Mr. Pleznac, as opposed to his wife, engaged in any untoward behavior at the federal courthouse following a hearing in late January 2022.

Of course, the court must hold Mr. Pleznac to account for his own actions as an officer of the court leading up to, and in connection with, the first meeting of creditors a few months ago. Again, however, even crediting Ms. Jones's testimony that during the § 341 meeting Mr. Pleznac inquired about an unconsummated real estate transaction involving adjacent property, or about the Debtors' firearms, these lines of inquiry are part and parcel of such an examination.  Interested parties and their counsel may make inquiries designed to test the accuracy of the debtors' schedules or other statements or their good faith, even if the inquiry tends to embarrass the debtors or cast them in a bad light.  Nor, for that matter, is the court concerned that Mr. Pleznac learned about the aborted purchase through third-party reports of the Debtors' allegedly private social media postings.  The Debtors offered no testimony or other evidence bringing Mr. Pleznac's conduct at the § 341 meeting within the proscription of M.R.P.C. 4.4.  Attorneys are free to inquire into the financial affairs of a debtor and if the attorney learns private or sensitive information that a third-party disclosed in violation of a debtor's expectations, the attorney must likewise be free to use

---

[3]*See* Letter from Hon. Samuel L. Alito, Jr., to Hon. Richard J. Durbin and Hon. Sheldon Whitehouse dated May 29, 2024 at p. 3 (stating that Mrs. Alito "makes her own decisions, and I have always respected her right to do so.") (available from the *Washington Post* at https://www.washingtonpost.com/documents/ae3feb5a-13a4-4f0f-9046-b61a530c40fb.pdf?itid=lk_inline_manual_4&itid=lk_inline_manual_28).

the information, subject to applicable privilege (which the Debtors have not identified).  The court acknowledges Mr. Pleznac's candor during his closing argument that he "did lose [his] head a little bit" at the adjourned creditors' meeting, but the testimony on July 10, 2024 regarding Mr. Pleznac's conduct at that time -- the only evidence presented to the court regarding that event -- does not satisfy the Debtors' heavy burden.

As other courts have noted, a litigant may raise allegations of attorney misconduct by filing a motion to disqualify counsel, *Allstate Insurance Co. v. Inscribed PLLC*, 571 F.Supp.3d 823, 833 (E.D. Mich. 2021), but courts view such motions with "disfavor."  *Courser v. Allard*, Slip Op. Case No. 1:16-CV-1108, 2016 WL 10520134 (W.D. Mich. Nov. 11, 2016) (denying motion to disqualify counsel).  A court will generally deny a disqualification motion unless the complaining party satisfies "a high standard of proof."  *In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999).  Courts approach disqualification motions in this way because they jealously protect the attorney-client relationship, including a litigant's choice of counsel.

When confronting a disqualification motion a few years ago, Judge Quist observed that a court must balance the public interest in upholding the integrity of the legal profession against the litigant's right to choose its own counsel.  *Courser, supra.*  To his credit, Mr. Jones attempted to elicit testimony relevant to this balancing, when he inquired into what harm Ms. Weeks would suffer if the court were to disqualify Mr. Pleznac from representing her in bankruptcy court.  He noted that she has two firms assisting her in the Calhoun County Circuit Court, and that they would not leave her defenseless here.  In response, Ms. Weeks testified that she valued Mr. Pleznac's legal representation because he has bankruptcy expertise, he cares about her and the outcome of her dispute with the Debtors, and is familiar with the underlying facts and circumstances, having

been involved for several years now.  It is also clear that Ms. Weeks has a friendship with the Pleznacs, just as the Debtors enjoy a friendship with their Calhoun County Circuit Court counsel as they stated during a prior hearing.  These intangible but nevertheless important concerns that Ms. Weeks expressed during the hearing, stacked against a record that shows (at most) active hostility from counsel's wife, tip the scales decidedly against disqualification.  The court, therefore, will deny the Motion.

The Debtors respectfully and capably prosecuted their Motion, and the court endorses Ms. Jones's high regard for attorneys and concomitantly high standards of professional conduct. Moreover, as stated at the hearing's conclusion, the court does not doubt that these proceedings, and the proceedings in Calhoun County, invariably result in stress and intimidation for her. Litigation is stressful and frequently unsatisfying for most.  More often than not, parties who strike their own bargains to avoid litigation experience less stress and more control, an outcome the court also endorses.

As long as this dispute remains pending, the court will continue to expect civility from all parties and others involved in the proceedings, and especially from members of the bar, but takes care not to confuse zealous advocacy and due diligence with misconduct.

Because tempers have flared in this matter and may flare again, and because no one should feel unsafe or intimidated while seeking relief from the court (as Ms. Jones reportedly does), the court encourages the parties to conduct any future, face-to-face interactions in connection with the bankruptcy within the federal courthouse where the United States Marshals Service's experienced and capable court security officers can provide not just security but a sense of it.  To this end, the court will make conference rooms available, should they become necessary, for depositions or

examinations under Rule 2004, mediation, or other litigation-related events in connection with the Debtors' bankruptcy, either in Kalamazoo or Grand Rapids.  Parties may contact chambers to make such arrangements.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtors (via U.S. Mail at the address on the docket in this matter), Laura J. Genovich, Esq., chapter 12 trustee, Robert J. Pleznac, Esq., counsel for Peggy Weeks, and the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

**Dated July 15, 2024**



Scott W. Dales
United States Bankruptcy Judge